JACKSON et al. v. STATE ex rel. HACK-
ETT, Co. Atty.

No. 18234. Opinion Filed April 16, 1929.

Ross & Thurman and Welch & Welch, for plaintiffs in error.

Louie C. Gossett, Co. Atty., and McDonald & Trice, for defendant in error.

JEFFREY, C. This action was commenced by the state of Oklahoma on relation of S. B. Hackett, county attorney of Push-mataha county, Okla., for the use and benefit of said county, as plaintiff, against W. H. Jackson and the Fidelity & Casualty Company of New York, as defendants, in the district court of Pushmataha county, for recovery on an alleged shortage in the accounts of said W. H. Jackson, who was county treasurer, and the Fidelity & Casualty Company, surety, on his official bond. The action was commenced on June 29, 1922, and the petition alleged that said Jackson was the duly elected, qualified and acting county treasurer of said county from July 4, 1921, to April 14, 1922, and gave bond as required by law with the Fidelity & Casualty Company of New York, as surety thereon; that during the term of office, he, as such officer, collected and received the sum of $5,000 belonging to plaintiff, and did not thereafter disburse or account for or pay the same over to his successor in office, and prayed judgment against the principal and surety for the sum of $5,000. The de-

fendants filed a motion to require plaintiff to make the petition more definite and certain by pointing out what $5,000 the petition referred to, and from what source it was received. This motion was overruled, to which the defendants excepted.

Thereafter, both defendants filed separate answers which admitted certain preliminary allegations, denied all others, and specifically alleged that if Pushmataha county, the board of county commissioners thereof, or the county treasurer, who succeeded Jackson, failed to receive and take over the sum of $5,000 belonging to said county, said sum was a certain sum on deposit in the First State Bank of Albion, Okla., on September 20, 1921, when said bank was declared insolvent, and which fund had been collected by a former county treasurer and deposited in said bank prior to the 5th day of July, 1921; that said bank had been duly designated as an official depository by the board of county commissioners; that said sum on deposit was secured by depository bonds, which had been duly approved by the county commissioners prior to July 5, 1921; that Jackson, as county treasurer, never received or collected said sum; that if the same had been lost, it was due entirely to the failure and insolvency of said bank and of the surety company on the depository bond; and that W. H. Jackson was not responsible therefor. The defendants further pleaded that when W. H. Jackson assumed office as county treasurer, he refused to receive and become responsible for said fund so deposited, but for the purpose of doing all in his power to protect the interest of the county, withdrew said fund as rapidly as possible, but that there was no time between July 5, 1921, and the date the bank failed, that there was sufficient money on hand in said bank whereby he could have withdrawn an additional $5,000, and that the loss to the county, if any, was not due to any carelessness, negligence, misfeasance or malfeasance of said W. H. Jackson. To these answers plaintiff filed replies in the form of general denials.

On May 20, 1926, the cause was tried to the court, a jury having been waived. The court found all issues in favor of plaintiff and against the defendants, and rendered judgment for the sum of $5,000. From the judgment both defendants have appealed.

Defendant's first objection is that the court erred in overruling the motions to make the petition more definite and certain. When a petition deals with a subject in general terms, is indefinite and uncertain in its

allegation as to what particular facts constitute the basis of liability claimed, the same should be, upon motion, made definite and certain so that the adverse party may be informed of the real matter that he is required to defend against. Schwartz et al. v. State et al., 70 Okla. 205, 174 Pac. 255; Nash v. Denton, 59 Kan. 771, 51 Pac. 896.

Counsel for plaintiff admits that the motion should have been sustained under authority of Schwartz et al. v. State et al., supra, but say that the defendants anticipated the facts and theory on which plaintiff sought to recover; that the answer fully set out the facts; and if the ruling of the court was error, the same became harmless. Authorities are also cited to the effect that a trial court is vested with a considerable measure of discretion in ruling upon motions to make more definite and certain. We appreciate the rules above referred to, and also that the overruling of such a motion will not constitute reversible error unless it appears that the court abused its discretion, and that the movant suffered some injury from the ruling thereon, but since we have concluded that the judgment must be reversed upon other grounds, defendants' motion will be ordered sustained.

We are unable to ascertain by the record just what theory plaintiff relied on for recovery, or on what theory the court rendered judgment. However, we are satisfied that the cause was tried on an erroneous theory, and that the judgment rendered cannot be sustained. Defendants say that the court erred in finding the issues in favor of plaintiff and in rendering judgment against the defendants, for the reason that such finding and judgment are contrary to law and the evidence. There are no special findings of fact in the record, and the journal entry of judgment does not include any special findings of fact. Counsel for plaintiff in their argument here present several theories by which they say the judgment should be sustained. They say that Jackson, by his acts in accepting the transfer of account of W. E. Leslie, Jackson's predecessor, in the Albion Bank, stepped into the shoes of Leslie; that the liability of Leslie therefor became the liability of Jackson; and Jackson was at all times thereafter estopped to deny the same. They further say that the loss to Pushmataha county was occasioned by depositing funds in said bank by Leslie in excess of the capital and surplus of the Albion Bank, and also in excess of the depository bonds of $15,000, by the retention of such excess in said bank by Jackson, and the negligence of Jackson, and the subsequent failure of the bank. They also assert that a treasurer in this state is not made responsible for the loss of a deposit where a surety company and bank both fail. Counsel for defendants contend that under the county depository act, the county treasurer is not an insurer of county funds, and is not liable for any loss sustained through the insolvency of the county depository and the insolvency of the surety on the depository bond unless such loss may also be attributed to some act or omission on the part of the treasurer which was a direct cause of the loss. We are inclined to the position of counsel for defendants.

Section 5727, C. O. S. 1921, provides, among other things, that the board of county commissioners shall designate certain banks as county depositories; that the treasurer shall deposit daily all funds which come into his hands in such depositories. This section provides further that before the board of county commissioners shall direct or authorize a deposit in such depositories, they shall take from each such bank a surety bond in a sum equal to the largest approximate amount that may be deposited in each at any one time. It is further provided that all such surety bonds shall be approved by the county attorney and county commissioners. The county treasurer nor his bondsmen are liable for loss of funds deposited in duly designated depositories, so long as he does not deposit amounts therein in excess of the capital and surplus of the bank, nor in excess of the amount of the approved depository bonds in the absence of some negligent act or omission which attributed directly to the loss. Hinton et al. v. State ex rel. Neal, 57 Okla. 777, 156 Pac. 161; Joint School District et al. v. First National Bank of Kingfisher et al., 125 Okla. 243, 257 Pac. 318. The record shows, and it is admitted, that the First State Bank of Albion had been designated by the board of county commissioners as provided by section 5727, C. O. S. 1921, an official county depository. That bank had given depository bonds in the total amount of $15,000. All of this occurred during the administration of Jackson's predecessor. Jackson's predecessor had deposited in said bank amounts in excess of the depository bonds, and amounts in excess of the capital stock and surplus of said bank in violation of the above provision of the statute. When Jackson qualified as county treasurer on July 5, 1921, there was on deposit of the county's funds in said bank the sum of $20,197.69. Under the law of this state, an outgoing county treasurer must settle his accounts with the board of

county commissioners. No formal receipt is required of the successor in office, and none was given in this case. If it be true that Jackson stepped into the shoes of his predecessor and assumed Leslie's liability, and was forever thereafter estopped to deny the same, either Jackson or Pushmataha county would be subjected to a manifest injustice and injury. Jackson had been elected to the office of county treasurer by the people. He qualified and was entitled to take over the office of county treasurer regardless of what condition he found it in, and this without assuming responsibility for all the wrongful acts of his predecessor. To place responsibility upon him for the wrongful acts of his predecessor would, in short, be denying him the office to which he was elected. When he qualified and assumed the duties of county treasurer, every duty connected with that office became his from then on. To say that he could refuse to take charge of the account in the First State Bank of Albion would be saying that he was under no obligation to perform certain duties imposed upon him by law and to the injury of the county. It became his duty to act with good faith, reasonable skill and diligence, in handling of this account, the same as in the discharge of all other duties pertaining to his trust. But where the law imposes a duty upon a public official, the performance of such a duty cannot become the basis of liability on his official bond unless he performs it in a negligent or unauthorized manner which results in an injury to his trust. The record shows that about three weeks after Jackson assumed the duties of county treasurer, he was informed that the Lion Bonding & Surety Company, surety on one of the depository bonds for the sum of $5,000, had become insolvent; that he did not make any deposits in this bank, but that, about the 21st of July, he began reducing the deposit in that bank. The first withdrawal was for $2,697.69. On August 13th, a draft was presented for $12,500, but payment was refused on this item. On August 17th, he withdrew $2,500, bringing the amount of the account down to $15,000, the amount of the depository bonds including the worthless bond of the Lion Bonding & Surety Company. On September 20, 1921, the First State Bank of Albion failed. The capital stock of that bank was $15,000, and the greatest amount of surplus ever on hand was $3,500. There was then on deposit of the county funds $15,000. The county received $10,000 from one of the depository bonds, but the surety on one bond for $5,000 having become insolvent, the county was unable to realize on the bond, and this action is to recover that sum.

But Jackson, in assuming the duties of his office, did not make himself nor his official bondsmen answerable for all the acts of his predecessor, nor of the board of county commissioners. He was only required to act with good faith, reasonable skill and diligence to correct the condition that he found and to save the county from loss. Did he act in bad faith, or was he negligent in failing to withdraw the $5,000 covered by the worthless surety bond? and can the loss or any part thereof be attributed directly to his acts or omissions? The inquiry should go no further, and yet it appears that the trial court went further.

Section 4124, C. O. S. 1921, requires that a state bank situated in a town or city of less than 2,500 population, such as Albion, shall keep on hand at all times an amount equal to five per cent. of its entire deposits in actual cash. The evidence is not full and complete as to the exact condition of the bank on each day from July 5th to September 20th, but it is uncontradicted that the average amount of cash on hand during this period was $1,500, and that the average total amount of deposits during this period was $45,000. There was put in evidence a statement showing the amount of cash and exchange in the bank on each day, but the cash and exchange are not separated. It would appear that, during almost the entire period, the bank was insolvent under the law, and there was no time when there was enough money in the bank to have paid the county an additional $5,000, by disregarding the law with reference to retaining a reserve. We can hardly presume that the bank would have violated the law further and paid checks out of the reserve, especially when it would have required the bank to close its doors immediately upon paying the $5,000. During about half of the time after the last withdrawal by the treasurer, the bank did not have enough money, including cash on hand and exchange in other banks, to pay the sum of $5,000. During the balance of the time, the evidence shows that the total cash and exchange was but very little in excess of that amount. There is no evidence by which the court could have found against the defendants for the entire sum of $5,000, without applying an erroneous rule of liability. There may be some evidence of negligence on the part of Jackson, which question we do not here decide, but, if so, it would not support the judgment for the full amount.

---

**106**

We feel that the cause was tried on an erroneous theory, and that a new trial should be granted.

The judgment is therefore reversed and the cause remanded, with directions to sustain defendants' motion to make the petition more definite and certain, and to grant a new trial.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.