INDEPENDENT SCHOOL DISTRICT 93,
POTTAWATOMIE COUNTY, OKLA-
HOMA, Appellant,

v.

WESTERN SURETY COMPANY,
Appellee.

No. 4–69.

United States Court of Appeals
Tenth Circuit.

Dec. 9, 1969.

Melvin F. Pierce, Oklahoma City, Okl. (Hugh A. Baysinger, Oklahoma City, Okl., and J. C. Winterringer, Shawnee, Okl., on the brief) for appellant.

Walter D. Hanson, Oklahoma City, Okl. (James M. Robinson, Oklahoma City, Okl., on the brief) for appellee.

Before HILL, SETH and HOLLO-WAY, Circuit Judges.

HILL, Circuit Judge.

This diversity suit was brought by appellant school district against appellee surety company on two statutory official

bonds.[1] The bonds were executed by the surety company to secure the faithful performance of one Kenneth E. Bovee, treasurer of the school district.[2] The case was tried to the court without a jury, and, after findings of fact and conclusions of law, judgment was entered in favor of the surety company.

The two bonds on Bovee, each in the sum of $100,000, commenced on January 1, 1964, and January 4, 1965, respectively. Although the bonds were issued on a calendar year basis, the school district operated on a fiscal year basis. The fiscal years in question which correspond to the bond terms are July, 1963, to June, 1964, and July, 1964, to June, 1965.

The school district's claims on the surety's bonds arose out of the alleged misconduct of Kenneth Bovee insofar as Bovee, acting in his official capacity, issued and paid (or caused to be paid) warrants in excess of the appropriations made and approved by the County Excise Board. The school district sought to prove that Bovee registered warrants in excess of appropriations, expended protected funds to pay current General Fund expenses, and failed to keep cur-rent accounts of yearly appropriations. And because of this misfeasance and nonfeasance, warrants in excess of appropriations were paid which resulted in yearly deficits for the school district, contrary to the Oklahoma Constitution and statutes. The alleged losses were in the sum of $192,210.25 on the 1964 bond and $279,234.29 on the 1965 bond; these sums are the excess of warrants paid over appropriations approved for fiscal 1963–64 and 1964–65, respectively. In addition the school district claims a $95,-000.90 loss due to a shortage of cash for protected funds caused by diverting protected funds to pay General Fund Warrants.

Appellant school district takes issue with a number of the trial court's findings of fact, but the crucial findings in question are: 1) Treasurer Bovee substantially performed the duties of his office; 2) there was no proof of a loss in 1963–64 which was covered by the surety's bond; and 3) there was no deficit or loss in 1964–65 for which the school district was liable so as to warrant recovery from the surety. The trial court's findings of fact cannot be set aside un-

---

1. 70 O.S.1961 Section 4–20 in pertinent part requires:

"The [school] treasurer so appointed shall execute, before entering upon the duties of his office, a surety bond in an amount which it is estimated by the board of education he will have on hand at any one time during the current year; and the amount of securities held as investments shall not be considered. The board of education is empowered to require the treasurer to increase or decrease his bond as the amount of funds on hand may require. * * *

\* \* \* \* \* \*

"The local treasurer of a district, when required by the board of education, shall prepare and submit in writing a report of the condition of the finances of the district and shall produce at any meeting of the board or to any committee appointed for the purpose of examining his accounts all books and papers pertaining to his office. Upon failure to make reports as provided for herein or as may otherwise be required by law, the board may at any regular or special meeting thereof summarily suspend said treasurer and while so suspended he shall perform no act pertaining to his office. Such suspension shall continue until ended by order of the board or by judgment of a court of competent jurisdiction.

"Upon suspension by the board, the treasurer shall immediately turn over to the board of education or to the acting treasurer if one has been appointed by the board all books and papers and other property pertaining to his office."

2. Each bond condition in pertinent part provides, "Now if the said Principal shall * * * promptly pay over to the person or officers entitled thereto, at the close of each day, month, or quarter, and term of office, all money which may come into his hands by virtue of his said office; * * * and shall well and truly keep all books of record and books of account required to properly record the doings of his office; * * * and shall hereafter exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers and securities or other property appertaining to said office * * * then this bond shall be void, otherwise in full force."

less clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.[3]

The trial court determined that although Bovee did not maintain a record of the status of unexpended appropriations, he relied upon the clerk, the Chairman of the Board of Education, and the Board of Education itself to maintain such a record. And it is uncontroverted that the treasurer registered warrants in excess of appropriations. But in regard to maintaining records and registering warrants, 68 O.S.1961, Section 299 says, "Each clerk or other issuing officer and each treasurer shall open and keep an account for the amount of each item of appropriation, showing the purpose for which the same is appropriated, and the date, number, and amount of each warrant thereon. No warrant or certificate of indebtedness in any form shall be issued, approved, signed, attested, or registered, on or against any appropriation for a purpose other than that for which the said item of appropriation was made, or in excess of the amount thereof."

■■ It is clear that treasurer Bovee did not perform the duties of his office at least as set out in the above statute. Moreover, the treasurer could not rely upon the Clerk or the Board of Education and presume that the warrants they presented to him for registration were within the unexpended balance of the appropriation.[4] The treasurer's statutory duty to maintain records of the unexpended appropriations and to not register warrants in excess of appropriations is a positive, non-delegable obligation. To say otherwise and to allow him to rely on others is to contradict the very spirit of the statute which seeks to prevent unauthorized spending by establishing an intricate network of checks and balances. It is apparent that a school district treasurer, because of the duties of his office, is one

of the final checks against the deficit spending which the Oklahoma Constitution so clearly prohibits. To allow him to rely on others destroys that check. The trial court's finding that Bovee substantially performed his duties is clearly erroneous.

Appellee argues that the treasurer could not have prevented the excessive expenditures by pointing out both that the treasurer's act of registering valid warrants is purely ministerial, and that the actual act of encumbering the appropriations takes place when the school board enters into a contract. The argument fails because the truth of those points neither blots out the specific duties imposed by the statute, nor does it demonstrate that it is impossible for the treasurer to perform his function as a check against running year-end deficits. Treasurer Bovee's failure to perform his duties may not have been the inception of the excessive expenditures, but nevertheless he is responsible for the deficits insofar as he could have prevented the deficits had he performed his function as a check against unauthorized spending.

Determining that Bovee did not perform the duties of his office is not conclusive of this case since there remains the difficult issue of whether his misconduct occasioned a loss to the school district which is recoverable under the conditions of the bonds. The loss issue is difficult because, unlike the usual case on a surety bond, the funds in question were not converted for private uses. Instead, the funds were used to buy goods and services for the school district, which were received by the school district. The allegation of loss is pinned solely to the fact that the funds expended were in excess of appropriations, and that this is in violation of Oklahoma law which requires school districts to operate on a cash basis.

In determining whether, under the circumstances, the school district sustained a loss and can recover the bond, it is easy

3. Rule 52(a), F.R.Civ.P.

4. See Hopley v. Benton, 38 Okl. 223, 132 P. 808, 810 (1913).

to get lost in a maze of statistics. To avoid that maze it is proper to put off the question of whether the school district has shown actual damages, and first determine whether the alleged losses were within the term of each bond's coverage.

The school district's complaint alleges damages in sums equalling the excess of warrants over appropriations for each of the years in question, and at trial they introduced an audit demonstrating the yearly deficits. On appeal, the school district contends that, despite the fact that the district received the goods and services for which the expenditures were made, their proof of these excessive expenditures shows actual damage insofar as, 1) the prohibition against deficits means that *per se* the school district would have been better off had the expenditures not been made; and 2) because some registered and paid warrants were for contracts in excess of appropriations, the school district paid some warrants which by law it was not obligated to pay. We perceive no real difference between the two points other than the latter's specificity. So, on the question of whether the alleged losses occurred during the term of each bond, they will be considered as a single point.

Any contract in excess of appropriations is by law not a charge against the school district.[5] This, coupled with the trial court's finding that the school district ran a deficit by reason of overexpenditure in fiscal 1963–64, makes it perfectly clear that the school district needlessly paid the warrants issued on the contracts in excess of the 1963–64 appropriations. It is also clear that had treasurer Bovee kept an account on each appropriation, he would have been alerted at some point to the fact that some of the warrants being presented for registration must be on contracts in excess of appropriations and need not be paid. Thus, some of the warrants issued on invalid contracts could have been caught before they were paid.

However, it is not certain from the record how many invalid contracts would not have been paid had Bovee kept the appropriation accounts and refused to register the warrants which the accounts would have indicated were on contracts in excess of appropriations. According to the evidence, Bovee might not have caught all of the excessive warrants before they were paid because there could have been a time gap—between contracting by the school board and registering the warrant on that contract by the treasurer—in which it could be possible for other contracts to be entered into and paid.[6] If there were some intervening contracts in excess of the appropriations, that fact of over-encumbering would not be reflected in the records the treasurer should have kept. His records would have only indicated how much of the appropriation had been diminished by registered warrants, and they would not reflect executed contracts which completely encumbered the appropriation but upon which no warrant had been issued. Consequently, the treasurer, without fault, could have paid a warrant which by law was not a charge against the school district.

---

5. 62 O.S.1961 Sections 474–79.

6. For example, if the appropriation was $100 and on Sept. 10th the school board entered a $100 contract with X to be performed on May 1, the appropriation would be completely encumbered. But the treasurer's account would still indicate an unencumbered balance of $100 since no warrants have been issued or registered against the account. If in the interval between X's contract and the issuance of X's warrant on May 1, the school board contracted with Y for an immediate purchase of goods from Y, a warrant would be immediately issued to the treasurer for registration and Y would be paid despite the fact that his contract was invalid. Thus, the treasurer inadvertently has paid Y's void warrant since the records he is required to keep did not disclose that X's contract exhausted the appropriation and Y's warrant was void. cf. Consolidated School Dist. No. 2 v. Arlington School Supply Co., 148 Okl. 299, 298 P. 1052, 1053 (1931).

■ The appellant failed to show which excessive warrants Bovee could have discovered before payment had he kept the required records. Moreover, there was no proof that the excessive warrants paid in fiscal 1963–64 were paid in the last half of the fiscal year which was the only part of the fiscal year covered by the first bond. So too, appellant failed to show which warrants paid in 1964–65 exceeded the appropriation. Absent such a showing, it is impossible to say how many of these warrants Bovee could have discovered had he kept the account required by 68 O.S.1961, Sec. 299, and it is impossible to determine whether the excessive warrants were paid in the last half of fiscal 1964–65 which is the term of the second bond. As the trial court found, appellant failed in his proof.[7]

■■ Appellant school district argues that there is a presumption that the excessive warrants were issued, registered, and paid during the term of the bond. Appellee argues to the contrary. Neither supplies any relevant Oklahoma state law on the point, nor have we found any. In other jurisdictions, there is a split of authority.[8] The trial judge determined that the burden is upon the school district to prove that the excessive warrants were registered and paid within the period of the bond. Unless clearly erroneous, the district court's determination of unclear state law will not be set aside.[9] We cannot say that the trial judge was clearly in error. The additional loss which appellant alleges because of the diversion of protected funds to pay General Fund expenses is merely a restatement of his above arguments. Appellant fails here also because again he has not proved that the payments were made within the term of either bond.

■ Finally, it is unavailing for appellant school district to argue that they need not show any actual damage and can collect the bond on the mere proof of Bovee's misconduct. If such a recovery is possible it is upon the theory that the surety bond was designed as a penalty for noncompliance with the Oklahoma law against deficit spending.[10] Although Oklahoma law does distinguish between bonds designed for indemnity and bonds designed as a forfeiture for breach of the law, the bond in this case is clearly the former. When the statutory bond is read together with the statute, as required, the purpose of indemnification is clear. It strains the statute too much to say that the school district can recover the entire amount of the bond as a forfeiture for the treasurer's failure to faithfully perform the duties of his office, and appellant need not prove the actual loss sustained.[11]

Affirmed.

7. Appellant urges that Hartford Accident & Indemnity Company v. City of Sulphur, 123 F.2d 566 (10th Cir. 1941) holds that the loss can only be calculated at the end of the fiscal year when the total deficit can be calculated. Besides being an inaccurate reading of Hartford, such a statement is inapposite. In the instant case there is no question that there were deficits. The question is what part of the deficit, i. e., excessive warrants, Bovee could have prevented had he performed his duties, and what part of that occurred within the bonded periods.

8. 43 Am.Jur.Public Officer § 449; See Annot. 132 A.L.R. 1093.

9. Wegner v. Rodeo Cowboys Association, 417 F.2d 881, (10th Cir. 1969); Douglas-Guardian Warehouse Corporation v. Jones, 405 F.2d 427 (10th Cir. 1969); Continental Casualty Co. v. Fireman's Fund Ins. Co., 403 F.2d 291 (10th Cir. 1968); Mutual of Omaha Insurance Company v. Russell, 402 F.2d 339 (10th Cir. 1968).

10. Merchants Mutual Bonding Company v. State, 438 P.2d 931 (Okl.1968); State v. Vending Mach. Corp. of America, 174 Okl. 603, 51 P.2d 724, 103 A.L.R. 391 (1935).

11. See Jackson v. State, 136 Okl. 103, 276 P. 715 (1929); See also Annot. 4 A.L.R. 2d 1348; 11 C.J.S. Bonds § 130.