**INDEPENDENT SCHOOL DISTRICT NO. 93, POTTAWATOMIE COUNTY, OKLAHOMA, Plaintiff-Appellant,**

v.

**TRINITY UNIVERSAL INSURANCE COMPANY, Defendant-Appellee.**

**No. 268–70.**

United States Court of Appeals, Tenth Circuit.

Dec. 30, 1970.

---

J. C. Winterringer, Shawnee, Okl., Lawrence E. Hoecker and Hugh A. Baysinger, Oklahoma City, Okl., for plaintiff-appellant.

Byrne A. Bowman, Oklahoma City, Okl., for defendant-appellee.

Before PICKETT, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This suit was brought by Independent School District #93, Pottawatomie County, Oklahoma, (hereinafter called School District) to recover on a statutory official bond covering the treasurer for the School District, Kenneth E. Bovee.[1]

Bovee was the treasurer of the School District from January 7, 1957, to October 31, 1965, at which time he was removed for cause following an official audit by a state examiner and inspector. This audit revealed that the School Board had routinely approved expenditures in excess of general fund appropriations,

and that Bovee had failed to maintain required records of appropriations and thus had registered and paid all the warrants approved by the School Board. During this period Bovee was covered by two different surety companies. Trinity Universal Insurance Company carried the bond from 1957 until January 7, 1964, at which time bond coverage shifted to the Western Surety Company which carried the bond until Bovee's removal for cause. The present suit only involves coverage under Trinity's bond from September 27, 1961, because of the five year statute of limitations. 12 O.S.1961, § 95. The School District has previously brought suit against Western Surety Company concerning their liability on the bond covering Bovee from January 7, 1964, until October 31, 1965. Independent School District 93 v. Western Surety Co., 419 F.2d 78 (10th Cir. 1969). The same basic facts established in the *Western* case were also found by the trial court to exist in the present suit. Although the findings of fact in *Western* are not binding in the present case, still the exact same rules of law will apply. Bovee's statutory duties as treasurer were set out in *Western*, 419 F.2d at 80. Those duties which Bovee failed to perform and which were found to be violative of the state's requirements in *Western* were also found to be omitted in the instant case. Thus in this case as in *Western*, there is no question but that Bovee did not faithfully perform his duties as required by state statutes and insured by the bond.[2]

As pointed out in *Western*, however, this is not depositive of the question of liability. In *Western*, recovery was not allowed because it was found that there was a failure of proof, *i. e.*, there was no showing of which warrants Bovee could have prevented payment on had he maintained the proper records.

---

1. Jurisdiction in the Federal Court is based on diversity of citizenship and jurisdictional amount. 28 U.S.C. § 1332.

2. The bond provided by Trinity provided that the treasurer "shall well and faithfully perform all and singular the duties incumbent upon him by reason of his election or appointment as aforesaid, and honestly account for all monies coming into his hands as such officer, according to law * * *."

This same failure of proof exists in the instant case, and plaintiff's attempt to recover for Bovee's registering and paying warrants in excess of appropriation fails.

The bond coverage in *Western* was separated into two terms from January, 1964, until January, 1965, and from January, 1965, until October, 1965. These terms did not match the fiscal terms which ran from July 1 until June 30. This mismatch created an additional burden of proof for the School District, *i. e.,* "there was no proof that the excessive warrants paid in fiscal 1963–64 were paid in the last half of the fiscal year which was the only part of the fiscal year covered by the first bond." *Western,* supra, at 82. The same situation existed for that portion of the fiscal year running from July, 1965, until October, 1965. Id. This is directly analogous to the partial terms in the instant case of September, 1961, until June 30, 1962, and July, 1963, until January, 1964. Here, as in *Western,* plaintiff did not meet this additional burden of proof.

Here fiscal year 1962–63 is analogous to fiscal year 1964–65 in the *Western* case in that the entire year was covered by the same company's bond, the only difference being that Trinity's bond was considered continuous, giving only $100,-000 coverage straight through from 1957 until 1964.[3] The bond in *Western* was considered two separate bonds. The basis of the court's decision in *Western* in regard to fiscal year 1964–65 was: "[A]ppellant failed to show which warrants paid in 1964–65 exceeded the appropriation. Absent such a showing, it is impossible to say how many of these

warrants Bovee could have discovered had he kept the account required by 68 O.S.1961, Sec. 299, * * *." This exact reasoning applies to the instant case, and the difference in viewing the term of the bond is immaterial.

The sole argument put forth by plaintiff to distinguish *Western* is that in the instant case Bovee's testimony was included in the record. The testimony relied upon by plaintiff concerns statements by Bovee admitting that he discontinued keeping records of appropriations after December of 1959, that he used general fund appropriations from one year to pay excess general fund warrants from the preceding year, that he commingled protected fund revenues with the general fund cash, and that he did not maintain records to show the status of the various accounts. This evidence, however, goes solely to the issue of Bovee's failure to perform his statutory duties, and as was found in both the *Western* and the instant case, there was no question but that Bovee did not perform his statutory duties. This evidence had nothing to do with establishing which of the warrants Bovee could have prevented paying had he maintained the proper records. An examination of the entire record reveals that such evidence was not introduced, and that at least with regard to liability for warrants registered in excess of general fund appropriations, there can be no recovery because of a failure of proof.[4]

One further issue raised by the School District concerns a cash shortage from a particular fund, the 1960 Bond Fund.[5] John Pantier, the state accountant who performed the audit of the financial po-

---

3. One of plaintiff's contentions is that this bond term was not continuous but was separate for each individual year, leaving Trinity liable for $100,000 for each separate year term. This issue is not reached because of the finding that there was a failure of proof.

4. Based on this finding that plaintiff failed in its proof to show the extent of the damages, we do not reach the first element of the trial court's decision not to award damages which was that since the

School District received goods and services for all expenditures, there was no "loss or damage" sufficient to allow recovery.

5. There is also an allegation in *Western* concerning a cash shortage. This claim was not allowed because of failure to prove that payments were made from this particular protected fund within the term of either bond. Independent School District 93 v. Western Surety Co., 419 F. 2d 78, 82 (10th Cir. 1969).

sition of the School District, testified that as of October 31, 1961, there was, considering all available cash assets, $68,-457.55 less than the amount required to be present in the 1960 Bond Fund. He further testified that as of September 30, 1962, there was a cash shortage, computed in the same manner, of $91,193.19. The School District argues that these shortages had to result from using funds from the 1960 Bond Fund to pay warrants drawn on some other fund, which is in violation of Oklahoma law.[6]

■ There is probably no question but that if a shortage were found to exist from the 1960 Bond Fund because of expenditures drawn from that fund to pay warrants drawn on another fund Bovee would be liable. Cf. State ex rel. Lester v. Baker, 156 Kan. 439, 134 P.2d 386 (1943). However, the audit shows that $395,000, or the entire amount of the 1960 Bond Fund, was paid out in valid warrants drawn on the 1960 Bond Fund. Thus it appears that even though at some point in time there were not sufficient funds to have paid out in cash the 1960 Bond Fund, still the full amount of that fund was expended in legal warrants drawn specifically on that fund. It is clear that no warrants were intentionally drawn against the 1960 Bond Fund and applied to other expenditures, and that any loss against this fund was only temporary in nature. Thus cases cited by the School District, such as Newport v. McLane, 256 Ky. 803, 77 S.W.2d 27 (1934), are not applicable. The School District argues that the only way all the payments could have been made from the 1960 Bond Fund was to have further illegal transfers between other funds, and that such illegal acts cannot correct the initial illegal act. It is, however, far from established under Oklahoma law or that of any jurisdiction, see Annot. 96 A.L.R. 664, whether

such an inadvertent temporary transfer should constitute a loss such as to make the treasurer and his bondsman liable. As this question is solely one of state law and is a case of first impression, it is primarily a question for the determination of the trial court judge, and his interpretation of the ruling Oklahoma law will not be overturned by us unless clearly erroneous. Machinery Center, Inc. v. Anchor National Life Insurance Co., 434 F.2d 1 (10th Cir. 1970); Parsons v. Amerada Hess Corp., 422 F.2d 610 (10th Cir. 1970). We cannot say that his finding was clearly in error and thus his decision not to allow plaintiff's recovery on the theory of a cash shortage in the 1960 Bond Fund will not be reversed.

Affirmed.

---

6. Even if the School District's position were entirely valid, it could recover only $22,735.64, the difference between the cash shortage established on October 31, 1961, and that established on September 30, 1962, as it was not shown that the shortage as of October 31, 1961, occurred

after the cutoff date of Sepember 27, 1961. Therefore, in speaking of proven cash shortages which occurred during the bond coverage in question in the instant case, we refer to the difference of the two amounts established, or $22,-735.64.